988 So.2d 816 (2008)
Christine McGrail, Wife of/and Paul FERGUSON
v.
Dr. Max SUGAR and CPC of Louisiana, Inc.
In re Medical Review Panel Claim of Christine McGrail, Wife of/and Paul Ferguson.
Nos. 2005-CA-0921, 2005-CA-0922.
Court of Appeal of Louisiana, Fourth Circuit.
June 25, 2008.
Opinion Granted in Part August 13, 2008.
*819 Harry D. Hoskins, III, Hoskins & Hoskins, LC, Gilbert E. Stampley, Stampley & Smith, New Orleans, Louisiana, Counsel for Plaintiff/Appellant.
Edward J. Rice, Jr., C. Byron Berry, Jr., Adams and Reese LLP, New Orleans, Louisiana, Counsel for Defendants/Appellees, Max Sugar, M.C. and RLI Insurance Company.
*820 James F. d'Entremont, Phelps Dunbar LLP, New Orleans, Louisiana, Marshall M. Redmon, Baton Rouge, Louisiana, Mark A. Kreger, Kimberly M. Hamm, Lord, Bissell & Brook LLP, Chicago, Illinois, Counsel for Defendant/Appellee, Transatlantic Reinsurance Company.
William D. Aaron, Jr., Mark C. Carver, Goins Aaron, P.L.C., New Orleans, Louisiana, Counsel for Defendant/Appellee, Orleans Parish School Board.
Robert I. Siegel, Rachel G. Weber, Gieger, Laborde & Laperouse, L.L.C., New Orleans, Louisiana, Counsel for Defendant/Appellee, Community Psychiatric Centers, Inc.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY III, Judge MAX N. TOBIAS, JR.)
McKAY, Judge.
The appellants, Christine McGrail, et al., ("McGrail"), appeal the judgments of the trial court denying their motion for new trial from the denial of their motion for a "Sibley Hearing", and granting the defendants', Transatlantic Reinsurance Company's, ("Transatlantic Insurance"), Community Psychiatric Centers, Inc.'s ("CPC Inc."), d/b/a Coliseum Medical Center, RLI Insurance Co.'s, ("RLI"), Orleans Parish School Board's. ("OPSB"), and Dr. Max Sugar's, exception of prescription and finding La. R.S. 9:5628 is constitutional.

FACTS AND PROCEDURAL HISTORY
On October 17, 1985, Christine McGrail, who was then fourteen years old and a sophomore at Mount Carmel Academy, was admitted to Coliseum Medical Center, a psychiatric treatment facility, under the care of Dr. Max Sugar, a psychiatrist.[1] In October 1987, Ms. McGrail was discharged from Coliseum Medical Center.
On July 13, 1998, Ms. McGrail and her husband, Paul Ferguson, filed their original petition, a "Petition for Fraudulent Breach of Fiduciary Duty", in Louisiana state court against Dr. Max Sugar and CPCLC, d/b/a CPC Coliseum Medical Center. The plaintiffs alleged that Dr. Sugar caused the plaintiff, Christine McGrail, to be falsely imprisoned and held in isolation for a period of over two years at Coliseum Medical Center by inducing her parents to believe that she suffered from a medical disorder that required prolonged hospitalization. They also asserted that CPCLC was liable in solido with Dr. Sugar for keeping Ms. McGrail in Coliseum Medical Center from 1985-1987, as well as implementing Dr. Sugar's orders; such action caused Dr. Sugar's fraud to occur, thus damaging Ms. McGrail.
By way of background information, on August 10, 1998, Dr. Sugar removed the case to the United State District Court for the Eastern District of Louisiana in Civil Action No. 98-2321. This removal was pursuant to 28 USC 1441(b), alleging that it was a civil action arising under the United States Constitution. In the plaintiffs' original petition they alleged constitutional violations under both the United States Constitution and the Louisiana Constitution. The plaintiffs amended their state petition to remove any United States constitutional violations and filed a motion to remand with the U.S. District Court. On September 18, 1998, the U.S. District Court remanded the matter back to state court based on a lack of subject matter jurisdiction. On remand, CPCLA answered the petition and asserted in its answer a peremptory exception of prescription. On October 15, 1998, Dr. Sugar *821 filed a dilatory exception of prematurity, averring that the claim was covered by the Louisiana Medical Malpractice Act and that pursuant to the provisions of La.R.S. 40:1299.39.1, he was a qualified health care provider; therefore, any action brought against him must first be submitted to a Medical Review Panel. The fact that Coliseum Medical Center was a psychiatric health care facility was not disputed. On December 4, 1998, the trial court sustained the dilatory exception of prematurity and dismissed without prejudice plaintiffs' actions against Dr. Sugar, ruling that the plaintiffs' actions were one of medical malpractice.
On January 12, 1999, CPCLA filed a peremptory exception of prescription pursuant to La. R.S. 9:5628. In its memorandum CPCLA argued the plaintiffs' claim sounded in medical malpractice, which limits the time to bring such a claim to three years.
On February 2, 1999, plaintiffs filed an amended petition asserting that La. R.S. 9:5628 was unconstitutional. Also in this amended petition, plaintiffs allege that CPCLA was a wholly owned subsidiary of CPC. This amended petition asserted that these defendants, Dr. Sugar, CPCLA, and CPC Inc., were liable in solido and sought judgments against them.
On February 9, 1999, the trial court sustained CPCLA's peremptory exception of prescription. It further denied the plaintiffs' request for a Sibley[2] hearing on the constitutionality of La. R.S. 9:5628 and denied the plaintiffs' constitutional challenge to this statute. The plaintiffs appeal the judgments which maintained CPCLA's exception of prescription and Max Sugar's exception of prematurity.
On appeal, this Court affirmed the trial court's judgment sustaining the prematurity exception. We concluded that the claim was covered by the Louisiana Malpractice Act. McGrail v. Sugar, 99-1138, unpub. (La.App. 4 Cir. 12/15/99), 759 So.2d 351, writ denied, Ferguson v. Sugar, 00-0475 (La.4/20/00), 760 So.2d 347. In doing so this Court reasoned that all of Ms. McGrail's allegations against Dr. Sugar arose out of a doctor-patient relationship and thus fell squarely within the ambit of the Medical Malpractice Act.
On June 18, 1999, CPC Inc. filed a peremptory exception of prescription, urging that given the trial court's earlier decision granting its subsidiary's, CPCLA's, exception of prescription, they were likewise entitled to be dismissed from the suit on the same basis. As a result of CPC Inc. and CPCLA subsequently filing for bankruptcy, the ruling on the exception was delayed. Likewise, the appeal from the judgment granting CPCLA's exception was stayed. A notice of this stay was filed in the record in the trial court on October 20, 1999.
On June 15, 2000, the plaintiffs filed a claim against Dr. Sugar with the Louisiana Patient's Compensation Fund ("PFC") and requested review by a Medical Review Panel. Over the many years since the impetus of this case, multiple supplemental and amending petitions were filed and multiple other parties were joined as defendants. The present appeal arises from various judgments by the trial court dismissing five of the defendants: Dr. Max Sugar; Transatlantic Insurance; RLI; CPC Inc.; and the OPSB.

PERTINENT JUDGMENTS
The judgments pertinent to this appeal are as follows:
*822 Judgment of October 29, 2004, and signed on December 6, 2004; this judgment is from CPC Inc.'s peremptory exception of prescription which the trial court granted and dismissed McGrail's claims with prejudice.
Judgment of October 29, 2004, and signed on January 4, 2005; this judgment is from defendants', Transatlantic Insurance's, Dr. Sugar's and RLI's, peremptory exceptions of prescription; the trial court maintained and dismissed all of McGrail's claims against these defendants with prejudice.
Judgment of December 10, 2004, and signed January 4, 2005; this judgment is a denial of McGrail's Motion for a "Sibley Hearing." The trial court, in this denial adopted the defendants', Transatlantic Insurance's, St. Paul Fire & Marine Insurance Company's, Dr. Max Sugar's and RLI's, memoranda opposing this motion.
Judgment of December 10, 2004, and signed January 19, 2005; this was a judgment for the OPSB's peremptory exception of prescription. The trial court maintained this exception finding that McGrail's petition was not timely filed, nor was the prescriptive period interrupted by McGrail's actions filed against Dr. Max Sugar. The trial court stated: "It is further ordered that a Sibley hearing is not required with respect to the granting of the Orleans Parish School Board's Exception of Prescription." The trial court also ordered that "the Exception of No Cause of Action, Exception of Prematurity and Exception of Improper Cumulation of Actions and Misjoinder of Parties be and are hereby deferred, reserving Orleans Parish School Board's right to bring same again."
Judgments of March 18, 2005, and signed on March 28, 2005; the first of these judgments was a denial of McGrail's motion for a new trial from the December 10, 2004, judgment denying the Sibley hearing. The trial court granted this new trial motion in part and denied it in part. The court found that "La. R.S. 9:5628 is constitutional, [sic] this statute does not violate the equal protection and the due process clauses and the Sibley hearing is denied." The trial court also denied McGrail's motion for leave to amend and granted the defendants' motion to Strike.[3] The second judgment on this day was a denial of McGrail's motion for new trial from the granting of the defendant's, CPC Inc's, exception of prescription.[4] The third judgment this day was the denial of McGrail's motion for new trial from the trial court's granting of OPSB's peremptory exception of prescription.[5]

ASSIGNMENT OF ERROR
The appellants essentially assert one assignment of error, that the trial court erred by granting the appellees'/defendants', Dr. Max Sugar's, CPC Inc.'s, Transatlantic Insurance's, RLI's, and the OPSB's, peremptory exception of prescription by finding La. R.S. 9:5628 constitutional, and dismissing all appellants' claims against them. In their argument the appellants advance various arguments and issues for review by this Court, all specifically challenging the peremptory provision of La. R.S. 9:5628, whether fraud applies to this peremptory period, whether the third category of contra non valentum conduct, which is willful, fraudulent or ill practice, suspends the three year repose and the constitutionality of the statute.

*823 STANDARD OF REVIEW
Appellate courts review a trial court's factual findings with the manifest error/clearly wrong standard. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). In order to reverse findings of fact, the reviewing court must find that no reasonable factual basis exists for the findings and the findings are clearly wrong. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). The factfinder's conclusion must be a reasonable one. Stobart v. State, Through Dep't of Transp. and Dev., 617 So.2d 880, 882 (La. 1993).
The Louisiana Supreme Court in London Towne Condominiums Homeowner's Ass'n v. London Towne Co., 2006-401, p. 4 (La.10/17/06), 939 So.2d 1227, 1231, noted that: "When prescription is raised by peremptory exception, with evidence being introduced at the hearing on the exception, the trial court's findings of fact on the issue of prescription are subject to the manifest error-clearly wrong standard of review." Id. at p. 4, 939 So.2d 1231; Carter v. Haygood, XXXX-XXXX, p. 9 (La.1/19/05), 892 So.2d 1261, 1267. Under the manifest error standard of review, a factual finding cannot be set aside unless the appellate courts finds that it is manifestly erroneous or clearly wrong. Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129, 132; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993); Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). In order to reverse a factfinder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Id. The appellate court must not re-weigh the evidence or substitute its own factual findings because it would have decided the case differently. Id.; Pinsonneault v. Merchants & Farmers Bank & Trust Co., 2001-2217, p. 11 (La.4/3/02), 816 So.2d 270, 278-79. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Id.

DISCUSSION
There are five defendants pertinent to this appeal; Dr. Max Sugar, Transatlantic Insurance, RLI, CPC Inc., and OPSB.

DR. MAX SUGAR
The appellants assert that the trial court erred in granting Dr. Max Sugar's peremptory exception of prescription. On October 29, 2004, the trial court maintained Dr. Sugar's exception and dismissed with prejudice all of McGrail' claims against Dr. Sugar. Dr. Sugar's actions have been adjudicated under the ambit of the Louisiana Medical Malpractice Act, La. R.S. 9:5628.

Prescription in the context of Medical Malpractice
The prescriptive period for medical malpractice actions is contained in La. R.S. 9:5628(A) and provides as follows:
No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such *824 claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
A reading of La. R.S. 9:5628 shows that the statute sets forth two prescriptive limits within which to bring a medical malpractice action, namely one year from the date of the alleged act or one year from the date of discovery, with a three year limitation from the date of the alleged act, omission or neglect. Campo v. Correa, 2001-2707, p. 9 (La.6/21/02), 828 So.2d 502, 509; Hebert v. Doctors Memorial Hosp., 486 So.2d 717, 724 (La.1986).
Ordinarily, the movant bears the burden of proof on trial of the peremptory exception, including the objection of prescription. SS v. State ex rel. Dept. of Social Services, 2002-831, p. 7 (La.12/4/02), 831 So.2d 926, 931. It is only where a petition reveals on its face that prescription has run that the burden shifts to the plaintiff to show that his action has not prescribed. Id. The burden remains with the movant where the plaintiff's pleadings make "a prima facie showing" that the suit was filed within the delays set forth in La. R.S. 9:5628. Campo v. Correa, 2001-2707, p. 9 (La.6/21/02), 828 So.2d 502, 509. A petition should not be found prescribed on its face if it is brought within one year of the date of discovery and facts alleged with particularity in the petition show that the patient was unaware of malpractice prior to the alleged date of discovery, and the delay in filing suit was not due to willful, negligent, or unreasonable action of the patient. Id.
Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription. Nevertheless, a plaintiff's mere apprehension that something may be wrong is insufficient to commence the running of prescription unless the plaintiff knew or should have known through the exercise of reasonable diligence that his problem may have been caused by acts of malpractice. Even if a malpractice victim is aware that an undesirable condition has developed after the medical treatment, prescription will not run as long as it was reasonable for the plaintiff not to recognize that the condition might be treatment related. The ultimate issue is the reasonableness of the patient's action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct. Campo v. Correa, 2001-2707, pp. 11-12 (La.6/21/02), 828 So.2d 502, 510-11. [citations omitted.]
"Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." Campo v. Correa, 2001-2707, pp. 11-12 (La.6/21/02), 828 So.2d 502, 510. Even if a plaintiff does not have actual knowledge entitling him to bring a suit, constructive knowledge that excites attention and puts the "injured party on guard and call for inquiry" is sufficient. Id. at p. 12, 828 So.2d at 510-11. "Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient *825 to start running of prescription." Id. at p. 12, 828 So.2d at 511.
However, mere apprehension "that something is wrong is not sufficient to start prescription unless plaintiff knew or should have known by exercising reasonable diligence that his problem condition may have been caused by acts of malpractice." Gunter v. Plauche, 439 So.2d 437, 439 (La.1983). "[P]rescription does not run as long as it was reasonable for the victim not to recognize that the condition may be related to the treatment." Griffin v. Kinberger, 507 So.2d 821, 823-24 (La. 1987). "[K]nowledge that an undesirable condition has developed ... after medical treatment does not equate to knowledge of everything to which inquiry might lead." Campo, 2001-2707, p. 15, 828 So.2d at 512-13.

Peremption
Peremption is a period of time fixed by law for the existence of a right, and unless timely exercised, the right is extinguished upon the expiration of the peremptive period. La. Civ.Code art. 3458. Thus, peremption is a period of time, fixed by law, within which a right must be exercised or be forever lost. Guillory v. Avoyelles Ry. Co., 104 La. 11, 15, 28 So. 899, 901 (1900). Peremption differs from prescription is several respects. While liberative prescription merely prevents the enforcement of a right of action by action, it does not terminate the natural obligation; peremption, however, destroys or extinguishes the right itself. State Board of Ethics v. Ourso, XXXX-XXXX, p. 4 (La.4/9/03), 842 So.2d 346, 349, citing Reeder v. North, 97-0239, p. 12, (La.10/21/97), 701 So.2d 1291, 1298. Public policy requires that rights to which peremptive periods attach are to be extinguished after passage of a specified period. Accordingly, nothing may interfere with the running of a peremptory period. Id. It may not be interrupted or suspended; nor is there provision for its renunciation. Id. And exceptions such as contra non valentem are not applicable. Id. As an inchoate right, prescription, on the other hand, may be renounced, interrupted, or suspended; and contra non valentem applies an exception to the statutory prescription period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues. Reeder v. North, 97-0239, p. 12 (La.10/21/97), 701 So.2d 1291, 1298 (citing Hebert v. Doctors Memorial Hospital, 486 So.2d 717, 723 (La.1986)).

Peremption in the context of Medical Malpractice
The Louisiana Supreme Court's latest pronouncement concerning La. R.S. 9:5628 resolves that the legislative intent behind the three year repose is that the period is peremptory not merely a prescriptive period. The Court noted that:
Considering the plain, explicit language of the statute, the obvious purpose behind the statute, and the readily apparent public policy, which mitigates against suspension, interruption, or renunciation of the time limit and in favor of certainty in terminating causes of action, we find La.Rev.Stat. § 9:5628 establishes a peremptive time period.
Borel v. Young, XXXX-XXXX (La.11/27/07), ___ So.2d ___, 2007 WL 4171208. We find that the Louisiana Supreme Court's recent decision in Borel, is dispositive as to whether the doctrine of contra non valentem applies to McGrail's claim. According to Borel, it does not. Having made this determination, we pretermit a discussion here of the merits of McGrail's contentions regarding Dr. Max Sugar's purported intentional concealment, and/or Dr. Max Sugar's allegedly preventing McGrail from availing themselves of their cause of action, *826 but will address below the contra non valentum issue as it relates to this case.
In Borel, the Supreme Court determined the "seminal issue" was whether La. R.S. 9:5628 is peremptive and therefore not susceptible of suspension, interruption, or renunciation for any reason, nor prescriptive. In Borel, the deceased patient's family brought a medical malpractice action in 2002, naming the medical center where she underwent surgery for ovarian cancer in August 1999 as the sole defendant. Two years after filing suit, during the deposition of the medical center's expert, the plaintiffs learned for the first time that the medical treatment provided by two of Mrs. Borel's physicians may have fallen below the applicable standard of care. Thereafter the plaintiffs filed a motion to amend their petition to name the two physicians, which the trial court denied. Therefore, the plaintiffs filed a separate lawsuit in 2005 against the two physicians and their insurer, asserting they jointly, severally and in solido with the medical center were negligent in their treatment of Mrs. Borel in August 1999. One of the doctors and his insurer filed an exception of prescription. The plaintiffs argued in response that the filing of their suit against the medical center, a joint tortfeasor, interrupted prescription as to all other joint tortfeasors, including the two doctors and their insurer. See Borel, p. 2, ___ So.2d at ___.
The district court granted the doctor's exception finding that the plaintiffs' claims against the doctor were perempted under La. R.S. 9:5628(A), as the negligent act complained of occurred before 1988 and suit was not filed until 1998, ten years later. On appeal, the Third Circuit Court of Appeal, while finding that both the one-year and three-year time provisions contained in La. R.S. 9:5628 were prescriptive, affirmed the district court's granting of the exception dismissing plaintiffs' claims, but for different reasons. Borel, p. 3, ___ So.2d at ___; See Borel v. Young, 06-352, 06-353 (La.App. 3 Cir. 12/29/06), 947 So.2d 824. The plaintiffs sought a writ of certiorari from the Supreme Court, which was granted.
In addressing the issue of whether the three-year time limitation contained in La. R.S. 9:5628 is prescriptive or peremptive, the Borel Court noted its prior decision in Hebert v. Doctors Memorial Hosp., 486 So.2d 717, 723 (La.1986), where the Court held that both the one-year and three-year time limitations set forth in the statute were prescriptive, and therefore were potentially susceptible to interruption or suspension. Borel, p. 4, ___ So.2d at ___. However, the Court further noted that within a year of its handing down the Hebert decision, the Louisiana Legislature amended and reenacted La. R.S. 9:5628 by passing 1987 La. Acts No. 915, and that the amendment changed the wording of the statute, and in effect, changed the law. Id. However, the Court recognized that it had never addressed the effect of the 1987 amendments and reenactment of the statute. Id. Thus, in analyzing the Legislature's changes in the wording of the statute, in Borel the Court stated:
The plain language of La. R.S. 9:5628 as reenacted by 1987 La. Acts No. 915 does clearly indicate the Legislature's intent that the three-year time period is preemptive, i.e., an extinguishment of the right upon a lapse of a specified period of time: "No action ... shall be brought unless filed within one year ...; however, even as to claims filed within one year ... of such discovery, in all events such claims shall be filed at the latest within ... three years ..." See Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law §§ 10.05, 10.06, n. 12 (2006 ed.); see also Spradlin v. Acadia-St. Landry Medical Foundation, *827 98-1977, p. 6 (La.2/29/00), 758 So.2d 116, 120 (describing the time limitations contained in La. R.S. 9:5628 as "special prescriptive and peremptive periods for malpractice actions"). The use of the word "shall," which must be interpreted as a mandatory provision, see La. R.S. 1:3, lends further credence to this conclusion. The language used in this particular three-year statutory time limitation does easily admit on its face of a conclusion as to its preemptive nature. Therefore, the plain meaning of this legislation, which is conclusive, clearly indicates both the intent and the purpose of the Legislature in reenacting La. R.S. 9:5628 to extinguish actions for medical malpractice after the lapse of three years from the date of the alleged act, omission or neglect, i.e., to limit the duration of the right to bring a medical malpractice claim. Accordingly, there can be no doubt from the clear and unambiguous language of the statute that it was the intent of the Legislature to set forth a precise peremptive period to govern the filing of medical malpractice suits against specific health care providers.
Borel, p. 7, ___ So.2d at ___. Applying their analysis of the Legislature's actions to the facts before it, the Borel Court held:
Considering the plain, explicit language of the statute, the obvious purpose behind the statute, and the readily apparent public policy, which mitigates against suspension, interruption, or renunciation of the time limit and in favor of certainty in terminating causes of action, we find La. R.S. 9:5628 establishes a preemptive time period.
Borel, p. 7, ___ So.2d at ___. Accordingly, because the plaintiffs' actions against the doctor were brought more than three years after the alleged act of malpractice, the Borel Court held that under La. R.S. 9:5628, their claims were extinguished by peremption.
Dr. Max Sugar treated Ms. McGrail between 1985 upon her admission to Coliseum Medical Center on October 17, 1985, through her discharge in October of 1987. By all accounts, Dr. Sugar's patient/doctor relationship ended at the latest in 1988. The appellants assert that her psychiatric treatment while under the care of Dr. Sugar was the cause of her severe mental problems. Ms. McGrail asserted that she did not discover this connexity until April 15, 1998, and filed the original petition on July 13, 1998. Dr. Max Sugar ceased treating Ms. McGrail in 1988, and the appellants' petition was not filed until 1998. Thereafter, Ms. McGrail continued mental treatment with many subsequent mental health care providers. Ms. McGrail asserts that the predominate cause of her severe mental condition was the isolation treatment that she was subjected to while a patient of Dr. Sugar's at the Coliseum Medical Center facility. She asserts that the correlation between this isolation treatment and her continued mental problems was not discovered until 1998. The appellants' assertions that Dr. Sugar knew and concealed his knowledge of the severity of this isolation treatment for personal gain and legal reasons are mere accusatory statements thwart with unsupported speculation and innuendo.
The appellants' claims have clearly prescribed. The alleged malpractice occurred between 1985 and 1987 and the original petition against Dr. Sugar was not filed until July 13, 1998. This matter not only prescribed on its face but is also barred by the three year peremptive period.
Based on the above jurisprudence and evidence in the record we agree with the trial court judgment sustaining Dr. Max Sugar's peremptory exception of prescription and finding that all of the appellants' *828 claims against Dr. Max Sugar are outside the three year peremptive period pursuant to the dictates of La.R.S. 9:5628. Therefore, applying La. R.S. 9:5628 to McGrail's petition, and considering the Supreme Court's holding in Borel v. Young, supra, we find that McGrail's malpractice action against Dr. Max Sugar is extinguished by peremption and accordingly, is not susceptible of suspension, interruption, or renunciation for any reason, including contra non valentem.
The appellants' also attempt to assert claims of willful concealment and other intentional torts on the part of Dr. Sugar in an attempt to enlarge the statute of repose. They assert that this is accomplished by asserting the theory of contra non valemtum.

CONTRA NON VALENTUM AGERE NULLA CURRIT PRESCRIPTIO
In the case sub judice, the appellants argue that based on the third category of this theory, prescription is suspended. In Carter v. Haygood, XXXX-XXXX (La.1/19/05), 892 So.2d 1261, the Louisiana Supreme Court found that prescription in a medical malpractice case is suspended pursuant to the third category of contra non valentum so long as the defendant health care provider continuously treated the plaintiff in an effort to improve the plaintiff's condition which was allegedly caused by negligent treatment.
However, the peremptive period may not be interrupted or suspended or renounced, and the exceptions such as contra non valentum are not applicable. Ourso, XXXX-XXXX at p. 4, 842 So.2d at 349; Hebert, 486 So.2d at 723; Reeder, 97-0239 at p. 12, 701 So.2d at 1298.
In this matter Dr. Max Sugar ceased his treatment of Ms. McGrail in 1988. There was no continued medical relationship or continuous treatment. The exception of contra non valentum, is not applicable in this matter as La. R.S. 9:5628 is subject to a peremptive period, not prescription, and cannot be challenged as such. Therefore, there is no merit to this argument.

COMMUNITY PSYCHIATRIC CENTER INC.
Coliseum Medical Center ("CPC Inc.) was a psychiatric facility owned and operated by CPCLA. CPCLA was an entity wholly owned by CPC Inc. The appellants' claim that Ms. McGrail was mistreated during her hospitalization at Coliseum Medical Center from October 1985, until her discharge in 1987.
CPC Inc. filed its original exception of prescription on July 7, 1999. Appellants filed their opposition in August of 1999; by this time CPCLA had already been dismissed from the lawsuit on an exception of prescription.
Upon a review of the record we can ascertain no separate identifiable claims, other than those relying upon the allegations of malpractice of CPCLA, that have been asserted against CPC Inc. individually. As such, the only liability that CPC Inc. may have is derived from liability on the part of its subsidiary, CPCLA. CPCLA filed its exception of prescription on January 12, 1999, which the trial court sustained pursuant to La. R.S. 9:5628, in February of 1999. The appellant had filed an amended petition to include CPC Inc. In turn, CPC Inc. filed its exception of prescription that was granted by the trial court on December 6, 2004, and is one of the judgments for review by this Court in this appeal.
The appellants have failed to establish their allegations against CPC Inc. to the extent necessary to distinguish them from their allegations against CPCLA, which *829 was already dismissed from the action. Based upon Ms. McGrail's own allegations, the trial court correctly determined that her claims against CPCLA, filed over eleven years after her alleged mistreatment, had prescribed. The trial court was correct in its ruling that no independent liability on the part of CPC Inc., had been alleged, and no vicarious or derivative liability may exist because CPCLA had already been dismissed. We find no merit to appellants' argument and agree with the judgment of the trial court.

TRANSATLANTIC REINSURANCE COMPANY
The appellants amended their original petition on June 24, 2004, to add Transatlantic Insurance as a defendant. Appellants assert that Transatlantic Insurance reinsured the direct insurance coverage provided by Legion Insurance Company ("Legion") for appellants' claims against Dr. Max Sugar, and that due to Legion's insolvency, Transatlantic Insurance was liable for all of Legion's liabilities.
On June 28, 2004, Transatlantic Insurance filed a peremptory exception of prescription requesting entry of an order dismissing supplements and amendments of January 27, 2004, April 8, 2004 and May 25, 2004. This exception was based on Louisiana Supreme Court decision in In re Medical Review Panel for Claim of Moses, 2000-2643 (La.5/25/01), 788 So.2d 1173 and La. R.S. 9:5628. In Moses, the plaintiff "discovered" five years after an operation on her cervix that her physician had left metal stitches used during surgery inside her body, which he failed to detect despite numerous follow-up examinations. Id. at p. 4, 788 So.2d at 1176. Like the appellants here, the plaintiff asserted that a physician has a continuing, fiduciary duty to disclose known information to the former patient each and every day until the former patient learns the information from another source, and that the failure to disclose this information in effect prevents the plaintiff from "discovering" her injuries. Id. The Supreme Court rejected this argument and held that the continuing tort doctrine does not apply as a defense against the three-year statute of repose in La. R.S, 9:5628.
Pursuant to Moses, a physician's malpractice must consist of a "continued tortuous treatments or conduct on the defendant's part [as] an essential element for possibly invoking the continuing tort doctrine." Id. at p. 23, 788 So.2d at 1185. Although, the appellants advance a continuous tort theory they provide no supportable evidence to invoke a continuous tort theory analysis.
Transatlantic Insurance's peremptory exception of prescription was heard on October 29, 2004, along with the exceptions of co-defendants, Dr. Sugar, CPC Inc. and RLI. The trial court determined that the appellants' action was one which seeks damages resulting from alleged acts of medical malpractice and, as such, is subject to La. R.S. 9:5628. The trial court further determined that, pursuant to the facts of the case, as alleged in the appellants' original petition, Dr. Sugar stopped treating Christine McGrail in 1988, more than a decade before the original petition was filed. Therefore, Dr.Sugar's alleged malpractice occurred more that a decade before the appellants' petition was filed; as such their claims are time barred.
It is evident that the appellants' cause of action had prescribed as it was filed more than a decade after the treatment by Dr. Sugar had ceased. Under Louisiana Law and applicable jurisprudence, we agree with the trial court and find that the appellants' action is indeed time barred by La. R.S. 9:5628. There is no merit to appellants' claim.

*830 RLI INSURANCE COMPANY
RLI is the reinsurance company that insured Dr. Max Sugar against any medical malpractice claims. As noted, all claims that appellants have advanced against Dr. Max Sugar and all other defendants have been dismissed pursuant to La. R.S. 9:5628. Based on the above discussion and jurisprudence we find no merit to the appellants' claim against RLI and find no error in the trial court's judgment.

ORLEANS PARISH SCHOOL BOARD
The trial court's judgment of December 10, 2005 and signed January 19, 2005, granted the OPSB's exception of prescription.
The appellants asserted that the school board was liable for a breach of duty during the years 1985-1987. The appellants' amended their original petition to assert their cause of action against the OPSB in 2004.
When the face of the petition shows the prescriptive period has already elapsed, the plaintiff has the burden of establishing that suspension, interruption or renunciation of prescription has occurred. Hoerner v. Wesley-Jensen, 95-0553, p. 3 (La. App. 4 Cir. 11/20/96), 684 So.2d 508, 510. Delictual actions generally are subject to a liberative prescription of one year, which commences to run from the day injury or damage is sustained. La. C.C. art. 3492. Prescription begins to run when damage to the plaintiff has manifested itself with sufficient certainty to support accrual of a cause of action. La. C.C. art. 3492; Cameron Parish School Bd. v. Acands, Inc., 96-0895, p. 6 (La.1/14/97), 687 So.2d 84, 88.
The appellants' original petition was filed in 1998 alleging fraud, false imprisonment, abuse, mistreatment and other torts against Dr. Sugar. The trial court dismissed the 1998 action against Dr. Sugar because it had prescribed as the claim was one of medical malpractice which had to be brought within three years of the alleged malpractice (1985-1987).
McGrail's argument claiming a solidary obligation with Dr. Max Sugar is unwarranted and without any substantiated proof other than theories and suggestion. Here the action appears to be prescribed on its face, the burden is on the plaintiff to prove the suspension or interruption of the prescriptive period, and if the plaintiff's basis for claiming interruption is solidary liability between two or more parties, then the plaintiff bears the burden of proving that solidary relationship. Hernandez v. Chalmette Medical Center, XXXX-XXXX, p. 7 (La.App. 4 Cir. 8/21/02), 826 So.2d 641, 645 (citing Younger v. Marshall Industries, Inc., 618 So.2d 866, 869 (La.1993)). With solidary obligations, it is the co-extensiveness of the obligations for the "same" debt that determines the solidarity of the obligation. Weber v. Charity Hospital of Louisiana, 475 So.2d 1047, 1051 (La.1985) (citing Narcise v. Illinois Central Gulf Railroad, 427 So.2d 1192 (La. 1983)).
In 1998, Ms. McGrail filed her original petition against Dr. Sugar. In that petition, as previously noted, she alleged fraud, false imprisonment, abuse, mistreatment and other torts. The appellants did not amend their petition adding the School Board until 2004. In that amended petition McGrail alleged that the School Board, during the period of 1985-1987, breached their duties to Ms. McGrail by failing to notify her parents about her individualized education program (IEP), failing to advise her parents of her removal from school in violation of the goals and objective of her special education, and failing to give her parents notice of and copies of her special education evaluations. The appellants claim that they did not discover *831 their action against the OPSB until 1998. They also claim that their action filed against Dr. Sugar in 1998 interrupted prescription against the OPSB based on a theory of solidary obligation.
The trial court held that the 1998 suit against Dr. Sugar had prescribed because of a claim for medical malpractice which had to be brought within three years from the alleged malpractice. Also, the trial court dismissed the action against the OPSB based on prescription.
Federal law governs the Individuals with Disabilities Education Act, 20 U.S.C.A. 1400 et seq. The prescriptive period for claims arising under this Act is one year. Claims under this Act are analogous to the statute of limitations under Louisiana state law, La.C.C. art. 3492. Therefore, that applicable prescriptive period for McGrail's action against the OPSB is one year.
In the instant matter not only have the appellants failed to meet this burden of proof but have failed to present or establish any evidence of a connexity between the OPSB and Dr. Sugar, much less a solidary obligation. Furthermore, the action has prescribed on its face. Ms. McGrail attended school between 1985-1987. She did not file her petition against the OPSB until 2004. Under any theory of law in Louisiana the action has prescribed. The appellants have failed to meet their burden of proof to establish interruption, suspension or renunciation of prescription. There is no merit to appellants' argument.

NEW TRIAL
The appellants argue that the trial court erred in not granting their motions for new trial from the judgments of March 18, 2005. The first denial of the appellants' motion for a new trial stems from the denial of the appellants' request for a Sibley hearing. The trial court granted this in part and denied it in part. It was granted to the extent that the trial court reviewed the matter for the constitutionality of La. R.S. 9:5628 and finding that the statute did not violate the equal protection and due process clauses. The second judgment denying the appellants' motion for a new trial is from the March 28, 2005, granting CPC Inc.'s exception of prescription. The third judgment denying appellants' motion for new trial is from the March 29, 2005 judgment granting the OPSB's exception of prescription.
The applicable standard of review in ruling on a motion for new trial is whether the trial court abused its discretion. Campbell v. Tork, XXXX-XXXX, p. 4 (La.2/20/04), 870 So.2d 968, 971; Martin v. Heritage Manor South Nursing Home XXXX-XXXX, p. 3 (La.4/3/01), 784 So.2d 627, 630. The applicable article in this case is La. C.C.P. art.1973, which provides discretionary grounds for the trial court to grant a new trial, and states that "[a] new trial may be granted in any case if there is good ground therefore, except as otherwise provided by law." The granting or denial of a motion for new trial is within the vast discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. La. C.C.P. art.1973; Morehead v. Ford Motor Company, 29,399, p. 5 (La.App. 2 Cir.5/21/97), 694 So.2d 650. In deciding whether to grant a new trial, the trial court may evaluate the evidence without favoring any party, draw its own inferences and conclusions and assess the credibility of witnesses. Id.; May v. Jones, 28,106, p. 6 (La.App. 2 Cir.5/8/96), 675 So.2d 275, 279.
Each of the trial court's judgments granting appellees' exceptions of prescription, has been addressed above. Therefore, we find no error in the trial court's denial of the appellants' motions for new *832 trial and affirm the trial court's denial of the appellants' motions for new trial.

CONCLUSION
After reviewing the record and applying the applicable law and evidence we find no error in the trial court's judgment. Accordingly, we affirm the trial court's judgments; the appellees' peremptory exceptions are sustained. Based on the applicable law and jurisprudence we find no error in the trial court's judgment holding La.R.S.9:5628 constitutional. Therefore, McGrail's actions against Transatlantic Insurance, CPC Inc., RLI, OPSB and Dr. Max Sugar are dismissed with prejudice as extinguished by peremption.
AFFIRMED.
MURRAY, J., Concurs in the Result.
TOBIAS, J., Concurs in the Result and Assigns Reasons.
TOBIAS, J., concurring in the result.
I respectfully concur in the result.
The Louisiana Supreme Court granted a rehearing on 14 March 2008 in Borel v. Young, 07-0419 (La.11/27/07), ___ So.2d ___. We rely in the majority's decision upon that case. Pending a definitive pronouncement by the Supreme Court in Borel, I feel compelled to concur in the result.

ON REHEARING
We grant the rehearing for the limited purpose of re-examining our opinion of June 25, 2008, in light of the recent Louisiana Supreme Court opinion, on rehearing, in 2007-C-0419, Borel, et al. v. Young and Louisiana Medical Mutual Insurance Company, (La. 7/1/08), ___ So.2d ___. We find that the above cited opinion in Borel does not alter the outcome of our opinion in the above captioned matter.
TOBIAS, J., concurs in the result and assigns reasons.
TOBIAS, J., concurring in the result and assigning reasons.
I respectfully concur in the result.
I agree with the majority that the Louisiana Supreme Court's decision on rehearing in Borel does not change the result that we originally reached. I would, however, explain in more detail to the parties why.
NOTES
[1] Coliseum Medical Center was owned by Community Psychiatric Centers of Louisiana, Inc. ("CPCLA"). CPCLA was a wholly owned subsidiary CPC Inc.
[2] Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094 (La. 1985). A Sibley hearing is premised on testing the constitutionality of La.R.S. 9:5628.
[3] This judgment was signed on March 28, 2004. We take judicial notice that this was clearly a clerical error and an inadvertent entry and should read 2005.
[4] This judgment was signed on March 29, 2005.
[5] This judgment was signed on March 29, 2005.