CHARLES R. JONES, Judge.
liThe plaintiffs/appellants, Nancy and Angelo Barcia (the Barcias), seek review of a district court judgment sustaining the peremptory exception of prescription filed by the defendants/appellees, Dr. Argimiro Lago, M.D., and the Louisiana Medical Malpractice Insurance Company (LMMIC). After our review of the record on appeal, we affirm.
The underlying facts giving rise to the instant suit stems from the March 29, 2005, death of the seventeen year-old son of the Barcias, Chad Barcia, who was a patient of pediatrician, and named appel-lee, Dr. Lago. Chad Barcia suddenly collapsed and expired while playing rugby at school.
Dr. Lago had last seen Chad Barcia as a patient on March 26, 2005. Mrs. Barcia was present with Chad during this office visit on the same date. The Barcias argue that Dr. Lago should not have prescribed to their son the ADD (attention deficit disorder) drug Adderall (a drug classified as an amphetamine)[1] because it [2was “allegedly contraindicated” since, as they claimed, their son had a cardiac condition, despite the fact that Chad had been on a similar ADD drug for many years preceding March 2005.
The first action filed by the Barcias was a Products Liability claim against Shire Pharmaceuticals, the manufacturer of Ad-derall, in the U.S. District Court in New Orleans on March 21, 2006. The Barcias argued that the Products Liability claim was filed well within one year from the date of the death of Chad. About four and one-half (4½) months later, the Barcias filed a medical malpractice complaint with the Patient’s Compensation Fund (PCF), on August 9, 2006.
In response to the PCF complaint, Dr. Lago argued that the August 9, 2006, filing date was greater than one year from the March 29, 2005, date of the death of Chad *661 Barcia and was also greater than one year from the date the Barcias knew or should have known of a relationship between the prescription of Adderall to Chad and his subsequent death.
On November 6, 2006, the U.S. District Court issued an order staying the federal litigation pending the completion of the review by the medical review panel stemming from August 9, 2006 PCF claim against Dr. Lago. The U.S. District Court specifically mandated in its Order of Stay that the Barcias had leave to reopen the stayed lawsuit “within 30 days of receipt of the medical review panel opinion.”
lsTo date, the Barcias have never sought to reopen the Federal case, as was specified in the U.S. District Court order. Thus, at this time, the federal Products Liability case may have been abandoned.
Thereafter, a Petition for Subpoena Power was filed in the 24th Judicial District Court (24th JDC), under docket number 636-577, by Dr. Lago on September 22, 2006. Dr. Lago then filed an exception of prescription, which was subsequently opposed by the Barcias. After a hearing on the exception on November 28, 2006, the 24th JDC denied the Exception of Prescription. A timely writ application was filed in the Louisiana Fifth Circuit Court of Appeal under docket number 2006-974. On February 28, 2007, the Fifth Circuit denied the writ application, noting “[w]e find relator has an adequate remedy on appeal. We, therefore, decline to exercise our supervisory jurisdiction.” Writing separately in a concurrence, Judge Daley noted:
I agree with the majority’s decision to deny this writ application. At this stage of the proceeding, the Barcias have only filed a petition with the Patient’s Compensation Fund and the type of damages sought by the Barcias is unclear. In Taylor vs. Giddens, 618 So.2d 834 (La.1993), the Supreme Court held that in a medical malpractice lawsuit, the prescriptive period for a wrongful death action is controlled by C.C. Art. 3492, while the prescriptive period for a survival action is controlled by LSA-R.S. 9:5628.
On August 10, 2009, the Medical Review Panel issued its findings and concluding that Dr. Lago did not deviate from the standard of care in his treatment of Chad Barcia. The Barcias then filed a lawsuit in the Civil District Court for the Parish of Orleans (CDC), on November 10, 2009. On May 18, 2010, Dr. Lago and LMMIC filed an exception of prescription to this lawsuit and a motion for summary judgment, therein arguing that the Barcias had not filed their lawsuit Lwithin the one-year prescriptive period, and as to the motion for summary judgment, that there were no genuine issues of material fact to preclude summary judgment. The Barcias filed oppositions to both the exception and the motion for summary judgment. The Bar-cias also attached an affidavit from a surgeon, Dr. William D. Zeichner, to their memorandum.[2]
On July 7, 2010, the district court rendered judgment granting the exception of prescription and offered written reasons which elicited that the Barcias had waited too long, after having more than sufficient information to reasonably believe they may have had a cause of action against Dr. Lago, to file their PCF complaint in August 2006. The district court also found that the Barcias had retained counsel well within the one year period after the death of Chad, as evidenced by the timely filing of the claim in federal court against the drug manufacturer. The district court *662 also noted that Mrs. Barcia was present with her son during the final office visits and was well aware that he was prescribed Adderall, even though he had complained of symptoms which she believed to be cardiac in nature. The district court further noted that Mrs. Barcia understood that Chad’s death was associated with the “effects of amphetamine.” The autopsy findings had concluded the same.
The Barcias filed a motion for new trial on July 23, 2010, arguing that “... it was Dr. Lago who prescribed the Adderall and that Chad died due to the Adderall....” They further argued that the doctrine of contra non valentón was misapplied by the district court in granting the exception of prescription. The Barcias also argued that since they received the medical records in February 2006, Land despite the personal first-hand knowledge of Mrs. Barcia in her affidavit of July 28, 2009, they argued that the medical records contained information proving their first reasonable knowledge of any cause of action they may have. The motion for new trial was denied by the district court on July 27, 2010. This timely appeal followed.
On appeal, the Barcias raise the following assignments of error:
1. At the hearing granting the exception of prescription, the district court erred by misconstruing or incorrectly applying the doctrine of contra non valentem;
2. The district court erred as to when the Barcias knew or should have known of the negligence of Dr. Lago;
3. The district court erred by not fixing a date prior to July, 2006 on which Mr. Salim and/or the plaintiffs knew or should have known of the negligence of Dr. Lago, nor finding a basis for such knowledge;
4. The district court erred in holding that the Barcias had actual or constructive knowledge of the alleged medical malpractice/negligence of Dr. Lago because the Barcias knew that Chad Barcia had taken Adderall that Dr. Lago prescribed;
5. The district court erred in holding that the Barcias had actual or constructive knowledge of the alleged medical malpractice/negligence of Dr. Lago on or before August 8, 2005 because the Barcias filed a Products Liability action against the manufacturer of Adderall on March 21, 2006;
6. The district court erred in rejecting or disregarding the affidavit and certified pleadings of - Mr. Salim; and
7. The district erred in rejecting or disregarding the judgment of the 24th JDC which denied exception of prescription of Dr. Lago.

DISCUSSION

This Court in Parker v. B & K Const Co., Inc., 2006-1465 (La.App. 4 Cir. 6/27/07), 962 So.2d 484, discussed the standard of appellate review for the grant of an exception of prescription by a district court:
| fi[i]n reviewing a peremptory exception of prescription, an appellate court will review the entire record to determine whether the trial court’s finding of fact was manifestly erroneous. Davis v. Hibernia National Bank, 98-1164 (La.App. 4 Cir. 2/24/99), 732 So.2d 61. When evidence is received on the trial of the peremptory exception, the factual conclusions of the trial court are reviewed by the appellate court under the manifest error-clearly wrong standard as articulated in Stobart v. State Through *663 Dept. of Tramp. And Development, 617 So.2d 880 (La.1993).
Katz v. Allstate Ins. Co., 04-1133 (La.App. 4 Cir. 2/2/05), 917 So.2d 443, 444.
Additionally, it is well-settled that “the standard controlling review of a peremptory exception of prescription requires that this court strictly construe the statutes against prescription and in favor of the claim that is said to be extinguished.’ ” Katz, 917 So.2d at 445 (quoting Security Ctr. Prot. Servs., Inc. v. All-Pro Security, Inc., 94-1317, 94-1318 (La.App. 4 Cir. 2/23/95), 650 So.2d 1206, 1214, and Louisiana Health Service v. Tarver, 93-2449 (La.4/11/94), 635 So.2d 1090, 1098).
Parker v. B & K Const. Co., Inc., 2006-1465, p. 2, 962 So.2d at 485. However, as noted by the Supreme Court, in Carter v. Haygood, 2004-0646 (La.1/19/05), 892 So.2d 1261,
[t]o soften the occasional harshness of prescriptive statutes, our courts have recognized a jurisprudential exception to prescription: contra non valentem non currit praescriptio, which means that prescription does not run against a person who could not bring his suit. Harvey v. Dixie Graphics, Inc., 593 So.2d 351, 354 (La.1992); see also, Plaquemines Parish Com’n Council v. Delta Development Co., Inc., 502 So.2d 1034, 1054 (La.1987); Cartwright v. Chrysler Corp., 255 La. 597, 232 So.2d 285, 287 (1970); R.O.M., Note, Gover v. Bridges: Prescriptionr-Applicability of Contra Non Valentem Doctrine to Medical Malpractice Actions, 61 Tul. L.Rev. 1541, 1541 n. 1 (1986-1987).
Id., 2004-0646, p. 11, 892 So.2d at 1268. The Court went on to state:
In Plaquemines Parish Com’n Council v. Delta Development Co., Inc., 502 So.2d 1034, 1054-55 (La.1987), we recognized the four instances where contra non valentem is applied to prevent the running of prescription: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiffs action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant. These categories thus allow “the courts to weigh the ‘equitable nature of the circumstances in each individual case’ to determine whether prescription will be tolled.” R.O.M., supra at 1545. Contra non valentem in medical malpractice suits is embodied in La. Rev.Stat. Ann. § 9:5628. White v. West Carroll Hospital, Inc., 613 So.2d 150, 155 (La.1992).
Id., 2004-0646, pp. 11-12, 892 So.2d at 1268-69. In addition, “... [t]he trial court is not required to accept the allegations of the petition as true for an exception of prescription.” Bowers v. Orleans Parish Sch. Bd., 95-2530, p. 7 (La.App. 4 Cir. 5/29/96), 694 So.2d 967, 972. (Emphasis in original).
As relates to an action in medical malpractice, the prescriptive period is set forth in La. R.S. 9:5628(A), which provides:
No action for damages for injury or death against any physician ... arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events *664 such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
Ferrara v. Starmed Staffing, LP, 2010-0589, p. 2 (La.App. 4 Cir. 10/6/10), 50 So.3d 861, 864. (Emphasis added).
While the Barcias have raised seven (7) assignments of error in the instant matter, several of the assignments, particularly assignments one (1) through five (5), are duplicative because they concern the issue of whether the Barcias had actual or constructive “knowledge” sufficient to be aware of their cause of action.
We have determined that the following timeline is relevant:
March 29, 2005: Chad Barcia dies from a heart attack;
August 28, 2005: Mandatory civil evacuation for Hurricane Katrina;
August 29, 2005: Hurricane Katrina strikes;
September 17, 2005 Residents allowed to return to certain areas;
September 20, 2005 Mandatory civil evacuation for Hurricane Rita;
September 23, 2005 Hurricane Rita strikes;
September 29, 2005 Certain zip codes allowed to return to the city;
January 2006: Dr. Lago provides “incomplete” medical records to Mr. Salim, counsel for the Barcias;
January 28, 2006: Dr. Lago writes a letter acknowledging incompleteness of the records he had sent;
February 14, 2006: Dr. Lago provides medical records to the Barcias;
March 21, 2006: The Barcias file a Products Liability claim in federal court against the manufacturer of Adder all;
| g July 2006: The attorney for the Barcias, Mr. Salim, obtains and reviews additional pages of medical records, particularly the visits of February 14th of 2005 and March 14th of 2005, from Dr. Lago;
August 9, 2006: The Barcias file a complaint with the PCF;
August 10, 2009: The Medical Review Panel issues its findings that Dr. Lago did not act below the standard of care;
November 9, 2009: The Barcias file their petition for damages in CDC;
May 18, 2010: Dr. Lago and the LMMIC filed an exception of prescription to the lawsuit and a motion for summary judgment;
July 7, 2010: The district court grants the exceptions of prescription and motion for summary judgment of Dr. Lago and the LLMIC;
July 23,1010: The Barcias file a motion for new trial;
July 27, 2010: The motion for new trial of the Barcias is denied by the CDC.
*665 We now turn our attention to the relevant testimony as to the parties and other persons involved in this matter.

Mrs. Barcia

In her affidavit dated July 28, 2009, Mrs. Barcia stated that she was solely responsible for taking her son, Chad, to his medical appointments for treatment of depression and weight management. Chad began his treatment with Dr. Lago sometime in 2003, after his original doctor retired. She also stated that she | inaccompanied Chad to all of his appointments, including the appointments immediately preceding his death on February 14th and March 14th of 2005. She indicated that on February 14, 2005, Dr. Lago restarted Chad on Concerta for his ADD, noting that Chad had stopped taking the Concerta for about one year prior to that date.
She indicated that a week after Chad restarted the Concerta, he expressed that he had a severe headache, experienced tightness in his chest, and that his heart felt that it would “pound out of his chest.” She stated that she asked Chad if he wanted to go to the Emergency Room, but after a few minutes, he said that he did not want to go. At that time, she instructed Chad not to take the Concerta. The following morning, she called Dr. Lago and scheduled an appointment. However, the appointment had to be rescheduled to March 14, 2005.
At the following appointment, Mrs. Bar-cia told Dr. Lago that she had instructed Chad not to take the Concerta, and she also reported the symptoms Chad experienced. She stated that Dr. Lago opined that Chad probably had a reaction to the Concerta and that he was going to put him on Adderall, in place of the Concerta. At this same visit, Mrs. Barcia indicated that Dr. Lago advised Chad that his blood pressure was slightly elevated and asked Chad if he was nervous.
Mrs. Barcia indicated that she knew with certainty that Chad took the Adderall on March 21st, 22nd, and 23rd of 2005. She further stated that while she knew Chad took the Adderall on school days, she was sure that he continued to take the medication while he was out of school during the Easter Break. She also indicated that on the date of Chad’s death, she and her husband were in Costa Rica.
111 Dr. Lago
Dr. Lago was deposed on December 3, 2008. He testified that he became Chad’s treating physician in 2000, after another doctor in the practice retired. He stated that the medical records reflecting his treatment of Chad started in March of 2000. He also testified that he did not personally prepare the request for medical records requested by Mrs. Barcia. He also could not recall when the request for the records was made other than that it was in 2006.

Mr. Robert L. Salim

Mr. Salim is an attorney for the Barcias. He signed an affidavit, dated November 21, 2006, and admitted therein that he “obtained and subsequently reviewed the medical records for Chad Barcia” from Dr. Lago’s office in July of 2006.

Mr. Andrea S. Lestelle

Mr. Lestelle is also an attorney for the Barcias. He appeared in court for the proceedings on November 28, 2006, at the 24th JDC, wherein the district court denied the exception of prescription of Dr. Lago. In addition, Mr. Lestelle and Mr. Salim are listed as counsel of record on the Petition for Damages filed in the CDC on November 9, 2009.
In the instant matter, the Barcias argue that the “discovery doctrine,” or rather the *666 fourth criteria of the doctrine of contra non valentem — suspends prescription until the plaintiff “should have discovered” the potential action against a specific defendant. The Barcias argue that while the district court correctly found that the doctrine of contra non valentem applies to wrongful death claims, it misconstrued or incorrectly applied the doctrine to the instant case. They argue that it is a settled matter of law that Louisiana courts recognize four situations in 112which prescription does not run against a plaintiff under the doctrine of contra non valentem.[3]
In support of their argument that the prescriptive period in the instant matter was suspended, the Barcias point to Footnote 10 of In re: Medical Review Panel of Moses, 00-2643, p. 8 (La.5/25/01), 788 So.2d 1173, 1179, for their argument that pursuant to the “discovery doctrine,” codified in La. R.S. 9:5628:
Contra non valentem is a judicially created exception to prescription based on the civil doctrine of contra non valentem agere nulla currit praescriptio, which means prescription does not run against a party who is unable to act. Crier v. Whitecloud, 496 So.2d 305, 307 n. 4 (La.1986)(on reh’g). Four categories of contra non valentem have been recognized. The first two categories are rarely invoked. In re Medical Review Panel Proceeding of Vaidyanathan, 98-0289 (La.App. 4th Cir.9/23/98), 719 So.2d 604, writ denied, 98-2674 (La.12/18/98), 732 So.2d 1238. As noted, the fourth category is equivalent to the discovery doctrine. Under the discovery doctrine, “prescription does not begin to accrue until the plaintiff should have discovered that he had a reasonable basis for pursuing a claim against a specific defendant.” Frank L. Maraist <& Thomas C. Galligan, Jr., Louisiana Tort Law § l(M(c) at 224 (1996). The fourth category is embodied in Section 5628, which both codifies the discovery rule and legislatively overrules it to the extent it applies to medical malpractice actions filed more than three years from the date of the act, omission or neglect.
Id., 2000-2643, p. 8 (La.5/25/01), 788 So.2d 1173, 1178, n. 10.
They argue that the key aspects of La. R.S. 9:5628(A) are the clauses: “or within one year from the date of discovery of the alleged act, omission, or neglect,” and “in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.” The Barcias argue 11sthat these two clauses allow a prescriptive period of one year from the date of discovery and a peremptive period of three years from the date of the alleged act, omission, or neglect, and that, therefore, contra non va-lentem is applicable generally under Louisiana law as well as specifically applicable to Medical Malpractice actions filed under the Louisiana Medical Malpractice Act.
The Barcias argue that the medical records were either “withheld or lost” by Dr. Lago until February 2006, the month before the anniversary of Chad’s death. Further, the Barcias also argue that at the hearing on the exception, the district court erred in applying a “could have known” standard as opposed to a “should have known” standard as reflected in the transcript of the proceedings that records the oral basis for the Court’s ruling:
The lawyer could have found the information sooner. I just don’t think that’s contra non valentem. Contra non va- *667 lentem is you had no way of knowing] what happened]. That didn’t happen here.
The Barcias also point out that during the hearing on the exception, the district court asked whether the Barcias’ attorney, Mr. Salim, “could have” reviewed the medical records of Chad Barcia “sooner than July 6, 2006.” They argue that the district court erred in posing the question of whether Mr. Salim could “wait ten years to look at records” before prescription begins to accrue. The Barcias argue that the proper determination for prescription is whether the plaintiff knew or should have known through the exercise of due diligence caused by medical malpractice.[4]
Dr. Lago and the LMMIC argue that the district court correctly applied the law of prescription as it applies to wrongful death and medical malpractice actions. | uThey argue that the Barcias knew “of all material facts to excite attention and curiosity so as to be placed on constructive notice of a cause of action.” Dr. Lago and the LMMIC also argue that in a wrongful death case it is the date of death that triggers the running of prescription, and they further contend that the date of knowledge of any medical error is inconsequential. They argue that the Barcias had sufficient information to become aware of a possible cause of action, and that, therefore, the prescriptive clock had run. They further argue that regardless of the argument of the Barcias, “the correct law,” as argued by Dr. Lago and the LMMIC, is that “prescription runs from the date of death in wrongful death,” cases regardless of the date of discovery.
A case which is most on point is Borel v. Young, 2007-0419 (La.11/27/07), 989 So.2d 42. In Borel, the family of a deceased patient filed a medical malpractice complaint with the PCF against the medical center at which the decedent was treated and against the physicians who provided treatment. Id., p. 2, 989 So.2d at 45. After the medical panel convened, it concluded there was no deviation from the standard of care by the facility, nor the physicians. Id. However, two years later, the family of the decedent filed a separate malpractice lawsuit in the district court against the medical center, but neglected to name the treating physicians and their insurers. Id., p. 3, 989 So.2d at 45. The family attempted to amend their original petition to add the treating physicians and their insurer as defendants; however, the motion to amend was denied by the district court. Id. Shortly thereafter, the family filed a separate lawsuit for medical malpractice against the treating physicians and their insurers, arguing that the 11Rdoctors were jointly, severally and in solido liable with the medical facility for the negligent treatment of the decedent. Id. In response to this second lawsuit, one of the physicians and an insurer filed an exception of prescription. The family opposed the exception and argued that the filing of suit against joint tortfeasors, interrupted prescription as to all other joint tortfeasors. Id.
The lawsuits were later consolidated. Id., p. 3, 989 So.2d at 46. At the hearing on the exception of prescription filed by a physician and an insurer, the district court concluded that the action was perempted and granted the exception of prescription. Id., pp. 3-4, 989 So.2d at 46. The family appealed. Id., p. 5, 989 So.2d at 46. The Third Circuit Court of Appeal affirmed. Id. The family of the decedent filed writs of certiorari to the Supreme Court. The Supreme Court affirmed the district court *668 and Third Circuit on the grounds that the three-year time period for filing a medical malpractice action was peremptive. Id., p. 13, 989 So.2d at 51. In particular, the Court wrote:
... [T]he statute provides that suit must be brought within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of same. With respect to the latter, the claim shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect. Clearly, the statute sets forth more than one period — the basic one year prescriptive period for delictual actions, coupled with the “discovery” exception of our jurisprudential doctrine of contra non valentem, and a separate and independent three-year time period for filing “at the latest.” The issue in this case is whether the three-year provision is interpreted as prescriptive or peremptive. If the provision is peremptive, plaintiffs’ claim against Dr. Young, filed more than three years after the alleged act of malpractice, has been extinguished, and plaintiffs’ suit must be dismissed. If the provision is prescriptive, it is potentially susceptible to interruption based on the general codal provisions of La. Civ.Code art. 2324(C).
In Hebert v. Doctors Memorial Hosp., 486 So.2d 717 (La.1986), this Court held that La.Rev.Stat. § 9:5628 was in both its features a prescription statute interpreting for the first time 1975 La. Acts. No. 808, which enacted this provision. Within a year of the Hebert decision, the Legislature amended and reenacted La. Rev.Stat. § 9:5628 by passing 1987 La. Acts. No. 915. The most substantial amendments to the provisions relevant to this opinion changed the language as to the three-year period from; — “provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect” — to read;— “however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.” Based on our research, this Court has never addressed the effect of the amendments and the reenactment. In this case, the court of appeal relied on Hebert without noting the change in the law.
... [biased on these well established presumptions, we now examine and interpret the amended and reenacted provisions of La.Rev.Stat. § 9:5628.
Peremption is a period of time fixed by law for the existence of a right, and unless timely exercised, the right is extinguished upon the expiration of the peremptive period. La. Civ.Code art. 3458. Thus, peremption is a period of time, fixed by law, within which a right must be exercised or be forever lost. Guillory v. Avoyelles Ry. Co., 104 La. 11, 15, 28 So. 899, 901 (1900). Consequently, peremption may not be renounced, interrupted, or suspended. La. Civ.Code art. 3461. It may, however, be pleaded or supplied by the court on its own motion at any time prior to final judgment. La. Civ.Code art. 3460. Peremption differs from prescription in several respects. While liberative prescription merely prevents the enforcement of a right by action, it does not terminate the natural obligation; per-emption, however, destroys or extinguishes the right itself. Ourso, 02-1978 at p. 4, 842 So.2d at 349; Hebert, 486 So.2d at 723; Pounds v. Schori, 377 So.2d 1195, 1198 (La.1979). Public poli *669 cy requires that rights to which peremp-tive periods attach are extinguished after passage of a specific period of time, and accordingly, nothing may interfere with the running of a peremptive period. Ourso, 02-1978 at p. 4, 842 So.2d at 349; Hebert, 486 So.2d at 723; Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291, 1298. The peremptive period may not be interrupted or suspended or renounced, and exceptions such as contra non valentem are not applicable. Ourso, 02-1978 at p. 4, 842 So.2d at 349; Hebert, 486 So.2d at 723; Reeder, 701 So.2d at 1298. On the other hand, as an inchoate right, prescription may be renounced, interrupted, or suspended, and contra non valentem applies an exception to the statutory prescriptive period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues. Ourso, 02-1978 at p. 4, 842 So.2d at 349; Hebert, 486 So.2d at 723; Reeder, 701 So.2d at 1298. It is not always easy to determine whether a period of time fixed by law is peremptive or prescriptive, and the determination must be made in each case in light of the purpose of the rule in question and in light of whether the intent behind the rule is to bar an action or to limit the duration of a right. La. Civ.Code art. 3458, Comment (c). Thus, the pertinent question in this case becomes whether the Legislature intended the three-year provision to be prescriptive or peremptive.
⅝ * ⅜ ⅜ * *
We turn now to the issue of whether La.Rev.Stat. § 9:5628 is peremptive and, therefore not susceptible of suspension, interruption, or renunciation for any reason, or prescriptive. We do so ever mindful of the jurisprudence of this Court holding that peremption is a matter to be determined by legislative intent and public policy. We begin with a search for legislative intent.
What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. State v. Williams, 00-1725, p. 13 (La.11/28/01), 800 So.2d 790, 800; La.Rev.Stat. § 24:177(B)(1). When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the Legislature, nor shall the letter of the law be disregarded under the pretext of pursuing its spirit. La. Civ.Code art. 9; La.Rev. Stat. § 1:4; La.Code Civ. Proc. art. 5052. The plain meaning of the legislation should be conclusive. United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989); State v. Benoit, 01-2712, p. 3 (La.5/14/02), 817 So.2d 11, 13. Considering the plain, explicit language of the statute, the obvious purpose behind the statute, and the readily apparent public policy, which mitigates against suspension, interruption, or renunciation of the time limit and in favor of certainty in terminating causes of action, we find La.Rev.Stat. § 9:5628 establishes a peremptive time period.
Borel v. Young, 2007-0419, pp. 6-13 (La.11/27/07), 989 So.2d 42, 48-51.
Shortly thereafter, however, the Supreme Court granted rehearing to the family of the decedent solely to address whether the amendment and reenactment of La. R.S. 9:5628 by 1987, Act. No. 915 § 1, created a substantive change in the statute by transforming the three-year time limitation from a prescriptive period to one of preemption. Id., p. 1, 989 So.2d at 53. In its analysis of Borel on rehearing, the Supreme Court extensively discussed the prescriptive and peremptive pe *670 riods for claims brought under the Medical Malpractice Act relating to La. R.S. 9:5628, as follows:
As we explained in our original opinion, it is not always easy to determine whether a particular time limitation is prescriptive or peremptive, and the civil code gives no guidance on how to make such a determination. Borel, at 47-48. As a result, “this court has resorted to an exploration of the legislative intent and public policy underlying a particular time limitation, for it is primarily whether the legislature intended a particular time period to be prescriptive or per-emptive that is the deciding factor in such a case.” State, Division of Administration v. McInnis Brothers Construction, 97-0742, p. 4 (La.10/21/97), 701 So.2d 937, 940. Typically, courts look to the language of the statute, the purpose behind the statute, and the public policy mitigating for or against suspension, interruption or renunciation of that time limit to determine whether a time limitation is prescriptive or peremptive. State Board of Ethics v. Ourso, 02-1978, p. 5 (La.4/9/03), 842 So.2d 846, 849. An examination of each of these factors in the present case reveals that 1987 La. Acts No. 915, § 1, amending and |19re-enact-ing LSA-R.S. 9:5628, does not evidence a legislative intent to change the result of Hebert and make the statute’s three-year period peremptive.
Because what the legislature says in the text of a statute is considered the best evidence of legislative intent, State v. Williams, 00-1725, p. 13 (La.11/28/01), 800 So.2d 790, 800, we begin with an examination of the language of LSA-R.S. 9:5628. Clearly, there is no language in LSA-R.S. 9:5628, as amended and reenacted by 1987 La. Acts. No. 915, § 1, which indicates the legislature’s intent that the three-year time period is peremptive. While we have held that it is not necessary for the legislature to state in a statute that it is peremptive in order for this court to hold that it is in fact peremptive, State Board of Ethics v. Ourso, 02-1978 at 5, 842 So.2d at 349, in some cases where this court has found a time period to be peremptive, specific language in the statute clearly indicated the legislature’s intent in that regard. See, e.g., Reeder v. North, 97-0239, p. 9 (La. 10/21/97), 701 So.2d 1291, 1297 (“The legal malpractice statute of limitations ... La. R.S. 9:5605 expressly states that the period is ‘peremptive’ and ‘in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.’ ”). When the legislature wishes to enact a peremptive period, it certainly knows how to make that intention manifest.
Id., 2007-0419, p. 12, 989 So.2d at 59. The Court further noted:
In our original opinion, we relied almost exclusively on the legislature’s use of the word “shall” in the statute as indicative of its intent to create a per-emptive period. Borel, at 50. However, if, as originally opined, the substitution of the word “shall” for “must” indicates a legislative intent to change the law and create a peremptive period, then we would be compelled to conclude that not only the three-year period, but also the one-year period, is peremptive, because the statute clearly states that “[n]o action ... shall be brought unless filed within one year.” LSA-R.S. 9:5628 (emphasis added). Such an interpretation of LSA-R.S. 9:5628, would produce an irreconcilable conflict between the statute and the provisions of the Medical Malpractice Act, a result clearly not intended by the legislature.
The laws of statutory construction require that laws on the same subject matter be interpreted in preference to *671 each other. LSA-C.C. art. 13; Louisiana Municipal Association v. State, 04-0227, p. 36 (La.1/19/05), 893 So.2d 809, 837. Where it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter. Id.; Hollingsworth v. City of Minden, 01-2658, p. 4 (La.6/21/02), 828 So.2d 514, 517.
Louisiana Revised Statutes 9:5628 cannot be examined alone, but must be interpreted in conjunction with the provisions of the Medical Malpractice Act, codified in LSA-R.S. 40:1299.41, et seq. As we explained in LeBreton, the Medical Malpractice Act prohibits the filing of a medical malpractice claim against a qualified health care provider prior to presenting the complaint to a medical review panel. The legislature, in enacting this legislation, took special cognizance of the-need to fully protect plaintiffs from the detrimental effect of liberative prescription; the legislature provides for suspension of the time within which suit must be filed during the pendency of the review process and for ninety days following notification to the claimant or his or her attorney of the panel opinion. LeBreton, 97-2221 at 10, 714 So.2d at 1230-1231; LSA-R.S. 40:1299.47(A)(2)(a) and (c). Indeed, the Medical Malpractice Act is replete with provisions respecting the operation and effect of this suspension. Suspension, as we have explained, applies only to prescription; a peremptive period, by definition, is not subject to interruption, suspension or renunciation. LSA-C.C. art. 3461; Hebert, 486 So.2d at 723. To suggest that the language of LSA-R.S. 9:5628 and, in particular, the use of the word “shall,” indicates an intent to establish a peremptive period would be to render the provisions of the Medical Malpractice Act relative to suspension meaningless, a result we cannot condone. Hollingsworth, 01-2658 at 5, 828 So.2d at 517 (“[C]ourts are bound to give effect to all parts of a statute and cannot give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided.”).
Id., 2007-0419, pp. 13-16, 989 So.2d at 60-62. (Emphasis in original). Additionally, the Court noted that:
[a]s to the public policy concerns which underlie the enactment of LSA-R.S. 9:5628, and mitigate for or against suspension, interruption, or renunciation of its 121time limits, Hebert explains that the statute is a prescription statute with a qualification, that is, the contra non valentem type exception to prescription embodied in the discovery rule is expressly made inapplicable after three years from the act, omission, or neglect, and that:
[t]his legislative limitation to a maximum of three years on the application of the discovery rule for a tort action involving medical malpractice-the discovery rule is an embodiment of contra non valentem — was purportedly a response to the problem of sharp increases in medical malpractice insurance rates.... It was believed that lengthy periods for filing suit brought about by the discovery rule (a mechanism by which the statute of limitations commenced running only upon discovery of an injury rather than upon perpetration of the tort) had contributed to the increasing number of malpractice claims and that, if the number of suits brought were restricted, insurance risks would be reduced *672 and rates would decline. [Citations omitted.]
Hebert, 486 So.2d at 722 n. 9. The public interest in controlling insurance costs to ensure the availability of health care is not thwarted or undermined by creating a hybrid prescriptive statute which expressly limits application of the discovery rule in an action for medical malpractice to a maximum of three years in lieu of creating a strict peremp-tive period requiring that an action be commenced within three years or forever lost. Clearly, the legislature intended that some type of suspension would operate, as it made a provision for such in the Medical Malpractice Act itself, recognizing the need to fully protect plaintiffs who would otherwise suffer the detrimental effect of liberative prescription during the panel review process that is required before an action can be filed.
Id., 2007-0419, p. 18-19, 989 So.2d at 63. After a lengthy discussion of public policy considerations and the Medical Malpractice Act, the Court concluded that:
... [w]e find that 1987 Acts No. 915, § 1 did not change the character of the three-year limitation period in LSA-R.S. 9:5628 from a prescriptive period to one of |2aperemption. We therefore reaffirm our holding in Hebert that both the one-year and three-year periods set forth in LSA-R.S. 9:5628 are prescriptive, with the qualification that the contra non va-lentem type exception to prescription embodied in the discovery rule is expressly made inapplicable after three years from the act, omission, or neglect.
Id., 2007-0419, pp. 28-29 (La.11/27/07), 989 So.2d at 69.
In the matter sub judice, Chad Barcia died on March 29, 2005, but the Barcias did not file a complaint with the PCF until August 9, 2006. The PCF claim was clearly filed more than one year after the one-year prescriptive period enumerated for a Medical Malpractice claim pursuant to La. R.S. 9:5628. The claim was also untimely filed to support either a survival action and/or wrongful death action, per La. C.C. articles 2315.1 and 2315.2.
As for the argument of the Barcias that contra non valentem suspended the prescriptive period, we find this argument is without merit. “[C]ontra non valentem applies an exception to the statutory prescription period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues.” Ferguson v. Sugar, 2005-0921, p. 11 (La.App. 4 Cir. 6/25/08), 988 So.2d 816, 825 (La.Ct.App.2008) writ denied, 2008-2179 La. 12/12/08, 996 So.2d 1118 (citing Reeder v. North, 97-0239, p. 12 (La.10/21/97), 701 So.2d 1291, 1298, (citing Hebert v. Doctors Memorial Hospital, 486 So.2d 717, 723 (La.1986))). Thus, in order to have contra non valentem apply, the Barcias had to prove that there was good cause which prevented them from timely filing their complaint with the PCF. However, our review of the record does not reflect that there was any such good cause. The argument that Dr. Lago provided medical records when they were requested, but that two dates were missing, but were later sent to the | ^Barcias is not such good cause. Thus, the one-year prescriptive period applies in all possible arguments raised by the Barcias.
While it may have been possible to request the medical records sooner, the Bar-cias have not illustrated that Dr. Lago was responsible through some duplicitous intent, for their failure to timely request Chad Barcia’s medical records. The Bar-cias further have not illustrated that upon receipt of the medical records that they, or Mr. Salim, exercised due diligence in timely filing a complaint with the PCF after *673 review of said medical records, especially given the strict time limitations imposed by prescription and peremption. Per his own affidavit, Mr. Salim indicated that he did not review the records until July of 2006. Thus, we find that the district court did not err in finding that the prescriptive period of one year had run by the time the PCF claim was filed in August 2006. The Barcias first five assignments of error have no merit.
In their sixth assignment of error, the Barcias argue that the district court erred in rejecting or disregarding the affidavit and certified pleadings of their counsel, Mr. Salim. Our review of the record indicates that the affidavit is a part of the record. Nevertheless, while the Barcias have raised this alleged rejection or disregard of the affidavit by the district as an assignment of error, they have failed to brief this issue. Thus, pursuant to the Uniform Rules, Court of Appeal, Rule 2-124,[5] we pretermit discussion of an assignment of error which has not been briefed.
In their seventh and final assignment of error, the Barcias argue that the district court erred in rejecting or disregarding the judgment of the 24th JDC which | ^denied the exception of prescription of Dr. Lago. The record reflects that a Petition for Subpoena Power was filed in the 24th JDC under docket number 636-577 by the Barcias. In turn, Dr. Lago filed an exception of prescription. After a hearing on the exception on November 28, 2006, the 24th JDC denied the exception of prescription. A timely writ application was filed by Dr. Lago in the Louisiana Fifth Circuit Court of Appeal under docket number 2006-C-974. On February 28, 2007, the Fifth Circuit denied the writ application noting “[w]e find relator has an adequate remedy on appeal. We, therefore, decline to exercise our supervisory jurisdiction.”
While the Barcias argue that the prior denial of an exception of prescription in the 24th JDC has the effect of res judica-ta, this argument is without merit. The denial of the exception by the 24th JDC did not preclude the CDC from revisiting the exception following the filing of the lawsuit in that court. Further, the Fifth Circuit denied the writ application of Dr. Lago on the basis that there was an adequate remedy on appeal and, as noted in the concurrence, the case was not ripe for review since it was still in the panel phase and the actual claims/damages were not yet clearly set forth. Therefore, we find that this assignment of error does not have merit.

DECREE

The judgment of the district court granting the exception of prescription of Dr. Lago and the Louisiana Medical Malpractice Insurance Company, is affirmed.
AFFIRMED

. Adderall is a brand-name oral medication composed of an amphetamine and dex-troamphetamine combination, which belongs to the group of medicines called central nervous system (CNS) stimulants. It is used to treat attention-deficit hyperactivity disorder (ADHD), and narcolepsy (uncontrollable desire for sleep or sudden attacks of deep sleep). Adderall increases attention and decreases restlessness in patients who are overactive, cannot concentrate for very long or are easily distracted, and have unstable emotions. It is also used as part of a total treatment program that also includes social, educational, and psychological treatment. The product is available in the following two dosage forms: IR (Instant Release) and XR (Extended Release).

. Dr. Zeichner opined that Dr. Lago deviated from the standard of care.

. The four categories are discussed above, pages 6-7 in Carter v. Haygood, 2004-0646 (La.1/19/05), 892 So.2d 1261.

. The Barcias cite Campo v. Correa, 2001-2707, p. 12 (La.6/21/02); 828 So.2d 502, 511 (citing Griffin v. Kinberger, 507 So.2d 821 (La.1987)).

. Unifonn Rules, Court of Appeal, Rule 2-12.4, provides in pertinent part, "All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed.”